1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   HABIBIBALLAH SYKES,

11              Petitioner,                    No. CIV S-03-2150 MCE DAD P

12        vs.

13   GAIL LEWIS, Warden, et al.,

14              Respondents.              FINDINGS & RECOMMENDATIONS

15   _____/

16              Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a 2001 judgment of

18   conviction entered against him on April 6, 2001 in the Sacramento County Superior Court on

19   charges of first degree robbery with personal use of a firearm.  He seeks relief on the grounds

20   that: (1) the trial court erred in failing to hold an adequate Marsden hearing; (2) the trial court

21   erred in refusing to cure a misstatement by the prosecutor; (3) the trial court erred in giving a jury

22   instruction on "flight;" (4) there was insufficient evidence to support the use of a firearm

23   enhancement; (5) the trial court erred in refusing to give a pinpoint jury instruction on a lesser-

24   included offense; and (6) his appellate counsel rendered ineffective assistance.  Upon careful

25   consideration of the record and the applicable law, the undersigned will recommend that

26   petitioner's application for habeas corpus relief be denied.

1

FACTUAL BACKGROUND[1]

In March 1999, defendant and a companion went to a house where the victim lived with his sister and her daughter.  According to the victim, defendant displayed a gun that he had in his pocket and told the victim to "break bread," which the victim understood to mean, "Give me what you got."  Eventually, the victim gave him approximately $1,000 in cash that the victim had in his pocket. The victim's sister and her daughter corroborated the victim's account of the robbery, except that neither of them saw the gun.

Defendant was charged with robbery perpetrated in an inhabited dwelling (Pen. Code, §§ 211, 212.5, subd. (a)), with an allegation that he used a handgun in committing the robbery.

At trial, defendant admitted being at the victim's house on the night in question, claiming he went there to get some marijuana from the victim, as he had in the past.  According to defendant, he took two pounds of marijuana from the victim without paying for it because the victim had shorted defendant $300 worth of marijuana in an earlier deal.  Defendant denied having a gun.

PROCEDURAL BACKGROUND

On September 22, 2000, a complaint was filed in the Sacramento County Superior Court charging petitioner with first degree robbery, in violation of California Penal Code § 211. (Clerk's Transcript on Appeal (CT) at 5.)  It was also alleged that petitioner personally used a firearm in the commission of the robbery.  (Id.)  Following a preliminary examination and holding order, the complaint was deemed an information and filed as such on October 31, 2000. (Id.)  After a jury trial, petitioner was convicted on all charges against him.  (Id. at 134-36.)  On April 6, 2001, petitioner was sentenced to thirteen years in state prison.  (Id. at 145.)

Petitioner filed a timely appeal of his conviction, in which he argued that: (1) the trial court conducted an inadequate hearing on his Marsden motion; (2) the trial court erred in failing to give a jury instruction in response to a misstatement by the prosecutor; and (3) the trial court erred in giving a jury instruction on "flight."  (Answer, Ex. A.)  Petitioner's conviction was

---

[1]  The following summary is drawn from the March 20, 2002 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 1-2, filed on August 3, 2004, as Exhibit A to respondents' answer.

2

1  affirmed in its entirety in a reasoned decision dated March 20, 2002.  (Id.)  On April 22, 2002,

2  petitioner filed a petition for review in the California Supreme Court, in which he raised the same

3  issues he had raised on direct appeal.  (Answer, Ex. B.)  The petition for review was summarily

4  denied by order dated June 12, 2002.  (Answer, Ex. C.)

5          On August 27, 2002, petitioner filed a petition for writ of habeas corpus in the

6  California Superior Court.  (Answer, Ex. D.)  Therein, he claimed that: (1) there was insufficient

7  evidence to support the use of a firearm enhancement; (2) the trial court erred in refusing to give

8  a pinpoint jury instruction; and (3) his appellate counsel rendered ineffective assistance when she

9  failed to raise the foregoing two issues on appeal.  (Id.)  In an order dated September 18, 2002,

10 the Superior Court denied petitioner's first two claims on the ground that they should have been

11 raised on appeal and denied the third claim on the merits.  (Answer, Ex. E.)  On October 7, 2002,

12 petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, claiming

13 that there was insufficient evidence to support the weapon enhancement and that the trial court

14 erred in refusing to give a pinpoint jury instruction.  (Answer, Ex. F.)  That petition was

15 summarily denied by order dated October 10, 2002.  (Answer, Ex. G.)

16         On February 5, 2003, petitioner filed a petition for writ of habeas corpus in the

17 California Supreme Court.  (Answer, Ex. H.)  Therein, he raised the same claims that he had

18 raised in his habeas petition filed in the California Superior Court.  (Id.)  That petition was

19 summarily denied by the California Supreme Court in an order dated October 1, 2003.  (Answer,

20 Ex. I.)

21                                ANALYSIS

22 I.  Standards of Review Applicable to Habeas Corpus Claims

23         A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

24 some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

25 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

26 Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

1  interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

2  Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

3  corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

4  (1972).

5          This action is governed by the Antiterrorism and Effective Death Penalty Act of

6  1996 ("AEDPA").  See Lindh v.Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

7  1062, 1067 (9th Cir. 2003)  Section 2254(d) sets forth the following standards for granting

8  habeas corpus relief:

9                  An application for a writ of habeas corpus on behalf of a
        person in custody pursuant to the judgment of a State court shall
10       not be granted with respect to any claim that was adjudicated on
        the merits in State court proceedings unless the adjudication of the
11       claim -

12               (1) resulted in a decision that was contrary to, or involved
        an unreasonable application of, clearly established Federal law, as
13       determined by the Supreme Court of the United States; or

14               (2) resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence presented in the
15       State court proceeding.

16  28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

17  Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

18          The court looks to the last reasoned state court decision as the basis for the state

19  court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

20  court reaches a decision on the merits but provides no reasoning to support its conclusion, a

21  federal habeas court independently reviews the record to determine whether habeas corpus relief

22  is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

23  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

24  reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

25  AEDPA's deferential standard does not apply and a federal habeas court must review the claim

26  /////

1  de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,

2  1167 (9th Cir. 2002).

3  II.  Petitioner's Claims

4      A.  Marsden Hearing

5          Petitioner claims that the trial court failed to conduct an adequate hearing on his

6  pretrial motion for substitution of counsel.  The California Court of Appeal explained the

7  background to this claim as follows:

> Prior to trial, defendant filed a handwritten Marsden motion in which he stated, "I feel that my [appointed attorney] . . . is not looking out for my best interest."  Defendant's specific complaints were his attorney had "'guarantee[d] that [he would] lose' this case" and thus had recommended that he accept an offer of 12 years in prison, then a subsequent offer of 5 years in prison. Defendant also complained that his attorney had interviewed him only twice in the four months she had represented him; that he did not receive discovery from her until two days earlier, despite having asked for it four months before that; and that statements made in court were not included in the discovery.
>
> At the hearing on his Marsden motion, defendant reiterated the reasons he gave in his written motion.  Defense counsel responded that she had had seven contacts with defendant;[2] her investigator had been to see him and had gone over the discovery with him; the investigator had interviewed the victim's sister and her daughter; and the attorney believed the five-year offer was "very beneficial" because there would be a mandatory ten-year term if the gun use allegation were found true.

19  (Opinion at 2-3.)  The state court record also reflects that when asked at the hearing on the

20  Marsden motion whether he had any further complaints about his trial counsel, petitioner stated

21  that when he reviewed the discovery, he noticed there were some "flaws" and inconsistencies in

22  the witness statements.  (Answer, Ex. J at 4.)  The trial court explained to petitioner that "small

23  inconsistencies of witnesses do not mean that you're not going to be found guilty" and "just

_____

[2]  Contrary to defendant's interpretation, we perceive, as the trial court apparently did, that defense counsel's reference to "seven contacts with him," meant with defendant not a witness.

5

because there's a few inconsistencies in the report is not reason to turn down [the plea] offer."

(Id. at 6.)  The trial court further explained that it was trial counsel's duty to inform petitioner

that he had a good chance of being convicted if she believed that to be true.  (Id.)  The trial court

denied petitioner's Marsden motion, ruling as follows:

> Okay.  All right.  I'm going to find that the Marsden motion must
> be denied.  The Defendant – or the Counsel has not failed to do
> anything she should have done.  She's not done anything wrong.
>
> The Defendant has got his discovery.  He's got the witnesses'
> statements.  The matter has been thoroughly investigated.
>
> Mrs. Bowman has been to see him many, many times and sent her
> investigator in addition to those times.
>
> And at this point it does sound like the Defendant is just unhappy
> that she's telling him her honest opinion about the status of the
> case, which is if he goes to trial he will probably lose.

(Id. at 7.)

In the instant petition, petitioner argues that the trial judge was in error when he

stated that trial counsel had met with petitioner "many, many times."  He states there is no

evidence in the record to support that assertion.  Petitioner also argues that the trial court "failed

to adequately entertain and investigate petitioner's complaints" and that the judge "did not listen

to what was being said."  (Am. Pet. at 5(b).)  Petitioner requests that "at the very least, the case

must be reversed to permit the court to conduct a full and fair Marsden hearing."  (Id.)

The California Court of Appeal rejected petitioner's arguments in this regard,

reasoning as follows:

> The record in this case reveals the trial court conducted an
> adequate inquiry into defendant's complaints about his appointed
> attorney.  The record also demonstrates the court did not abuse its
> discretion in denying the Marsden motion.
>
> "[P]resenting, and even urging, acceptance of the prosecution's
> settlement offer is an insufficient basis for substitution of counsel.
> [And] a defendant's complaint that counsel did not consult often
> enough . . ., a failure to cooperate . . ., and tactical differences . . .
> do not require substitution of counsel unless the disagreement
> 'signal[s] a breakdown in the attorney-client relationship of such

6

1   　magnitude as to jeopardize defendant's right to effective assistance
2   　of counsel.'" (People v. Shoals (1992) 8 Cal.App. 4th 475, 497,
    　quoting People v. Robles (1970) 2 Cal.3d 205, 215, citations
3   　omitted.)

4   　On the record before us, the trial court reasonably could conclude
    　that defendant's complaints about his appointed attorney did not
5   　signal such a breakdown in the attorney-client relationship that
    　defendant's right to effective assistance of counsel was in jeopardy.
6   　It also was reasonable for the court to conclude that further inquiry
    　would not have revealed such a breakdown.

7   　In sum, defendant received an adequate Marsden hearing, and the
    　trial court acted properly in denying the Marsden motion.

8

9   (Opinion at 5.)

10  　　The Sixth Amendment to the United States Constitution guarantees the right to

11  the assistance of counsel in a criminal prosecution.  Such assistance must be effective and

12  competent.  Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  Where a defendant is

13  proceeding with the assistance of counsel, he may move to dismiss or substitute his appointed or

14  retained attorney.  The grant or denial of such a motion may depend on its timeliness and the

15  nature of the conflict between the defendant and current counsel.  Hudson v. Rushen, 686 F.2d

16  826, 829 (9th Cir. 1982).  The Ninth Circuit Court of Appeals has ruled that in assessing a

17  Marsden claim in the context of a habeas corpus proceeding, the Sixth Amendment requires only

18  "an appropriate inquiry into the grounds of such a motion, and that the matter be resolved on the

19  merits before the case goes forward." Schell v. Witek, 218 F.3d 1017, 1025 (9th Cir. 2000) (en

20  banc).  See also Hudson v. Rushen, 686 F.2d at 829 (state trial court's summary denial of a

21  defendant's motion for new counsel violated the Sixth Amendment because "a trial court must

22  permit a defendant seeking a substitution of counsel after the commencement of the prosecution's

23  /////

24  /////

25  /////

26  /////

7

1   case to specify the reasons for his request"); <u>Baker v. Yates</u>, No. 04-CV-1533 H(BLM), 2007

2   WL 2156072, *7 (S.D. Cal. July 25, 2007).[3]

3           The decision of the California Court of Appeal rejecting petitioner's <u>Marsden</u>

4   claim is not contrary to or an unreasonable application of the authorities cited above and should

5   not be set aside.  The trial court conducted a complete and thorough hearing on petitioner's

6   motion for substitute counsel.  Petitioner was given the opportunity to explain all of his

7   complaints about his trial counsel.  Trial counsel responded to petitioner's concerns and the trial

8   court issued a thorough ruling responding to each of petitioner's concerns.  This was sufficient to

9   pass constitutional muster.  Even if the trial court over-estimated the number of times trial

10  counsel met with petitioner to discuss his case, there is no evidence that counsel was unprepared

11  to represent petitioner or that her advice to accept a plea offer was improper or wrong.  Put

12  another way, there is no evidence that any conflict between petitioner and his trial attorney "had

13  become so great that it resulted in a total lack of communication or other significant impediment

14  that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth

15  Amendment."  <u>Schell</u>, 218 F.3d at 1026.  Accordingly, for these reasons, petitioner is not entitled

16  to relief on his <u>Marsden</u> claim.

17      B.  <u>Jury Instruction Error</u>

18          Petitioner raises several claims of jury instruction error.  After setting forth the

19  applicable legal principles, the court will evaluate these claims in turn below.

20  /////

21  /////

22

23          [3]  Similarly, in assessing on direct appeal a federal trial court's decision to deny a motion

24  to substitute counsel, the court looks at three factors:  "'(1) timeliness of the motion to dismiss
    counsel; (2) the adequacy of the court's inquiry into the defendant's complaint; and (3) whether

25  the conflict between the defendant and his attorney was so great that it resulted in a total lack of
    communication preventing an adequate defense.'"  <u>United States v. McClendon</u>, 782 F.2d 785,

26  789 (9th Cir. 1986) (quoting <u>United States v. Mills</u>, 597 F.2d 693, 700 (9th Cir. 1979)).  <u>See</u> <u>also</u>
    <u>United States v. Musa</u>, 220 F.3d 1096, 1102 (9th Cir. 2000).

1        1. <u>Legal Standards</u>

2            In general, a challenge to jury instructions does not state a federal constitutional

3    claim. <u>See</u> <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456

4    U.S. 107, 119 (1982)); <u>Gutierrez v. Griggs</u>, 695 F.2d 1195, 1197 (9th Cir. 1983).  In order to

5    warrant federal habeas relief, a challenged jury instruction "cannot be merely 'undesirable,

6    erroneous, or even "universally condemned,"' but must violate some due process right

7    guaranteed by the fourteenth amendment." <u>Prantil v. California</u>, 843 F.2d 314, 317 (9th Cir.

8    1988) (quoting <u>Cupp v. Naughten</u>, 414 U.S. 141, 146 (1973)).  To prevail on such a claim

9    petitioner must demonstrate "that an erroneous instruction 'so infected the entire trial that the

10   resulting conviction violates due process.'" <u>Prantil</u>, 843 F.2d at 317 (quoting <u>Darnell v.</u>

11   <u>Swinney</u>, 823 F.2d 299, 301 (9th Cir. 1987)).  In making its determination, this court must

12   evaluate the challenged jury instructions "'in the context of the overall charge to the jury as a

13   component of the entire trial process.'" <u>Id.</u> (quoting <u>Bashor v. Risley</u>, 730 F.2d 1228, 1239 (9th

14   Cir. 1984)).  Where the challenge is to a refusal or failure to give an instruction, the petitioner's

15   burden is "especially heavy," because "[a]n omission, or an incomplete instruction, is less likely

16   to be prejudicial than a misstatement of the law." <u>Henderson v. Kibbe</u>, 431 U.S. 145, 155

17   (1977). <u>See</u> <u>also</u> <u>Villafuerte v. Stewart</u>, 111 F.3d 616, 624 (9th Cir. 1997).

18        2. <u>Improper Remarks by the Prosecutor During Closing Argument</u>

19            Petitioner claims that the trial court erred by refusing to give a curative jury

20   instruction in response to certain remarks made by the prosecutor in his closing argument.

21   Respondents contend that petitioner did not exhaust state remedies with respect to this claim.

22   Specifically, respondents state that petitioner did not present a federal constitutional claim in

23   state court, but argued only that the prosecutor's remarks violated state law.  (Answer at 16.)

24   Alternatively, respondents urge that petitioner's claim of instructional error be denied on the

25   merits pursuant to 28 U.S.C. § 2254(b)(2).

26   /////

1          The exhaustion of available state remedies is a prerequisite to a federal court's

2  consideration of claims sought to be presented in habeas corpus proceedings.  See Rose v. Lundy,

3  455 U.S. 509 (1982); 28 U.S.C. § 2254(b).  However, "[a]n application for a writ of habeas

4  corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the

5  remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).  A federal court

6  considering a habeas petition may deny an unexhausted claim on the merits when it is perfectly

7  clear that the claim is not "colorable."  Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005).

8  Notwithstanding petitioner's alleged  failure to exhaust in state court his claim of jury instruction

9  error, this court will recommend that habeas relief be denied on the merits because the claim is

10  not "colorable" and petitioner is therefore not entitled to habeas relief.

11          The California Court of Appeal fairly summarized the background to petitioner's

12  jury instruction claim regarding the prosecutor's closing argument as follows:

13          Defendant was the sole defense witness.  As noted above, he
            admitted being at the victim's house on the night in question, but
14          claimed he simply took two pounds of marijuana from the victim
            without paying for it because the victim was a drug dealer who
15          previously had shorted defendant about $300 worth of marijuana.

16          In closing argument, the prosecutor commented on defendant's
            failure to call any other witnesses to corroborate his testimony that
17          the victim was a drug dealer.  Specifically, the prosecutor stated:
            "You heard at the beginning of this trial that [the] defense doesn't
18          have to put on any evidence at all.  [¶]  It's . . . my burden to prove
            this case beyond a reasonable doubt.  [¶]  And we put the witnesses
19          on to do that.  But he testified.  He tried to provide a defense for
            you.  He gave his story.  [¶]  I have the power to subpoena
20          witnesses.  The defense has that absolute power.  Equal.  There is
            no difference.  Remember where this all happened at:  At an
21          apartment complex; one of these incidents allegedly happened at
            his house, while [he] was home.  So – we hear from any witnesses?
22          Do we [hear] any evidence to support any of this? . . .  Remember
            a mention of Nathaniel Blakley and his being a drug dealer.  Is
23          there any evidence of him being a drug dealer from the neighbors
            in the neighborhood?  From police?"  (Italics added.)
24
            Outside the jury's presence, defense counsel asked the court to
25          "strike any mention to bringing witnesses to court of having
            subpoena powers, et cetera, et cetera" on the ground "[i]t borders
26          on the very serious nature of pointing to defense [counsel's] failure

1     to act."  The court concluded "the prosecution's argument was a
fair argument" and declined to give "any further admonishments to

2     the jurors."

3    (Opinion at 6-7.)

4           In the instant petition, petitioner claims that "by arguing that petitioner had not

5   provided 'evidence', the prosecutor was in effect stating that the petitioner's own testimony did

6   not constitute evidence."  (Am. Pet. at 5(c).)  Petitioner contends that the trial court should have

7   "clarif[ied] for the jury that a defendant's testimony in fact constitutes evidence."  (Id.)  He also

8   argues that the trial court "allowed the prosecutor to argue the text of CALJIC 2.62, even though

9   it did not give the instruction itself."  (Id.)  Finally, petitioner notes that "the sole evidence on his

10  behalf came from his own mouth" and he argues that the prosecutor's closing argument left him

11  "without a defense."  (Id. at 6.)[4]

12          The California Court of Appeal rejected petitioner's arguments in this regard,

13  stating as follows:

14  /////

15

16        [4] CALJIC 2.62 specifies when an adverse inference may be drawn from a criminal
defendant's testimony.  The instruction is as follows:

17        In this case defendant has testified to certain matters.

18        If you find that [a] [the] defendant failed to explain or deny any evidence against

19      [him] [her] introduced by the prosecution which [he] [she] can reasonably be
expected to deny or explain because of facts within [his] [her] knowledge, you
may take that failure into consideration as tending to indicate the truth of this

20      evidence and as indicating that among the inferences that may reasonably be
drawn therefrom those unfavorable to the defendant are the more probable.

21

22      The failure of a defendant to deny or explain evidence against [him] [her] does
not, by itself, warrant an inference of guilt, nor does it relieve the prosecution of

23      its burden of proving every essential element of the crime and the guilt of the
defendant beyond a reasonable doubt.

24

25      If a defendant does not have the knowledge that [he] [she] would need to deny or
to explain evidence against [him,] [her,] it would be unreasonable to draw an
inference unfavorable to [him] [her] because of [his] [her] failure to deny or

26      explain this evidence.

1        There was nothing improper in the prosecutor's argument.
Contrary to defendant's claim, the sentence upon which he seizes
2    did not assert that defendant's testimony was not evidence.  Given
a fair construction, the argument merely pointed out that defendant
3    had failed to call any witnesses to corroborate his own testimony.
Defendant does not contend the argument was improper when
4    construed in that manner.

5        Simply stated, the prosecutor's argument was proper and the trial
court did not err when it refused to admonish the jury as defendant
6    requested.

7    (Opinion at 7.)

8        The decision of the California Court of Appeal rejecting petitioner's claim of jury

9    instruction error is not contrary to or an unreasonable application of the federal due process

10   principles set forth above.  Viewed in context, the prosecutor was clearly commenting on the fact

11   that petitioner had not supported his testimony with the testimony of any other witnesses.  The

12   prosecutor did not state, or even insinuate, that petitioner's testimony was not evidence.  Nor did

13   the prosecutor inform the jurors that they could draw an adverse inference from the lack of

14   corroborating evidence.  At most, the prosecutor made the common sense argument that

15   petitioner's testimony should be viewed with caution because it was uncorroborated.  Under

16   these circumstances, the trial court did not err in declining to give a cautionary instruction.

17   Accordingly, petitioner is not entitled to relief on this claim.[5]

18   /////

19   _____

20       [5] Respondents construe petitioner's arguments as a claim that the prosecutor committed
misconduct because his comments insinuated that petitioner's testimony was not evidence and
21   therefore deprived petitioner of a defense.  It does not appear to this court that petitioner is
raising a claim of prosecutorial misconduct.  However, assuming arguendo that petitioner
22   intended to present such a claim, relief should nonetheless be denied.  A defendant's due process
rights are violated when a prosecutor's misconduct renders a trial unfair.  Darden
23   v. Wainwright, 477 U.S. 168, 181 (1986).  Relief on such claims is limited to cases in which the
petitioner can establish that prosecutorial misconduct resulted in actual prejudice.  Johnson v.
24   Sublett, 63 F.3d 926, 930 (9th Cir. 1995) (citing Brecht v. Abrahamson, 507 U.S. 619, 637-38
(1993)); see also Darden, 477 U.S. at 181-83; Turner v. Calderon, 281 F.3d 851, 868 (9th Cir.
25   2002).  For the reasons explained above, petitioner has failed to demonstrate that the prosecutor's
remarks constituted misconduct or that they rendered petitioner's trial fundamentally unfair.
26   The prosecutor's closing argument did not improperly undermine the defense presented by
petitioner's uncorroborated testimony.

1        3. <u>Jury Instruction on Flight</u>

2        Petitioner argues that the trial court erred when it gave the following jury

3   instruction:

> The flight of a person immediately after the commission of a
> crime, or after he is accused of a crime, is not sufficient in itself to
> establish his guilt, but is a fact which, if proved, may be considered
> by you in the light of all other proved facts in deciding whether a
> defendant is guilty or not guilty.  The weight to which this
> circumstance is entitled is a matter for you to decide.

8   (CT at 97.)  Petitioner concedes that he left Sacramento for Virginia several weeks after the

9   incident underlying the robbery charge, but he argues that his actions did not justify a jury

10  instruction allowing the jury to draw a negative inference from his "flight."  Petitioner contends

11  that because his departure occurred two weeks after the robbery and before he was arrested, his

12  flight was not "immediately after the commission of the crime" or after he was "accused of the

13  crime," as required by the language of the jury instruction.  Petitioner argues that the challenged

14  jury instruction improperly "allowed the jury to impute consciousness of guilt."  (Pet. at page

15  entitled "Continuation of Ground Three Page 6(a).)  He also argues that the instruction resulted

16  in prejudice because it undermined his credibility on the "close" issue of whether he used a gun

17  in the commission of the crime.  (<u>Id.</u>)

18       The California Court of Appeal rejected petitioner's argument in this regard,

19  explaining its reasoning as follows:

> "A flight instruction is proper whenever evidence of the
> circumstances of defendant's departure from the crime scene or his
> usual environs . . . logically permits an inference that his
> movement was motivated by guilty knowledge." (<u>People v. Turner</u>
> (1990) 50 Cal.3d 668, 694.)  The timing of the departure goes to
> the weight to be given the evidence of flight, not to its
> admissibility.
>
> Defendant acknowledged that he left Sacramento for Virginia a
> week or two after the incident and did not return to California
> voluntarily.  Apparently, defendant was extradited to Sacramento
> in September 2000 after he was arrested in Virginia on unrelated
> charges.  According to defendant, he left because he was having

13

1     unspecified "problems" in Sacramento, but the jury was under no
obligation to believe his explanation.  (See People v. Hutchinson
2     (1960) 71 Cal.2d 342, 346.)

3     Under the circumstances of this case, the jury reasonably could
infer that defendant's change of residence within two weeks after
4     the crime reflected a consciousness of guilt.  Hence, the flight
instruction was appropriate.  In any event, defendant has failed to
5     demonstrate a reasonable probability that he would have received a
more favorable verdict if the flight instruction had not been given.
6     (People v. Watson (1956) 46 Cal.2d 818, 836.)

7  (Opinion at 8-9.)

8          Pursuant to California law, the decision whether to give a jury instruction on flight

9  is not dependent on "inflexible rules about the required proximity between crime and flight."

10  People v. Mason, 52 Cal. 3d 909, 941 (1991) (flight instruction proper where the defendant fled

11  four weeks after the crime).  Instead, "the facts of each case determine whether it is reasonable to

12  infer that flight shows consciousness of guilt."  Id.  Here, petitioner left Sacramento shortly after

13  the crime was committed and refused to return voluntarily.  These actions logically permit an

14  inference that petitioner's move to Virginia was motivated by guilt and justified the trial court's

15  decision to inform the jury that petitioner's flight from Sacramento could properly be considered

16  in determining his guilt of the charged crimes.  See McMillan v. Gomez, 19 F.3d 465, 469 (9th

17  Cir. 1994) (jury instruction on flight proper where the jury was expressly instructed, as here, that

18  defendant's flight was evidence of guilt only if defendant's flight was proved).  Further, contrary

19  to petitioner's argument, the challenged jury instruction, which merely allowed the jury to take

20  the fact of flight into consideration in deciding guilt, had no bearing on the specific question of

21  whether petitioner had a gun during the commission of the robbery.  Under the circumstances of

22  this case, petitioner has failed to demonstrate that the jury instruction on flight was either

23  erroneous or "so infected the entire trial that the resulting conviction violates due process."

24  Prantil, 843 F.2d at 317.  Accordingly, petitioner is not entitled to habeas relief on this claim.

25  /////

26  /////

1       4.  Pinpoint Jury Instruction on Lesser-Included Offense

2              Petitioner's next claim is that the trial court erred in refusing to give a "pinpoint"

3   jury instruction to the effect that petitioner was guilty of the lesser included offense of "grand

4   theft from the person" if the prosecutor failed to demonstrate beyond a reasonable doubt that

5   petitioner used a gun during the robbery.  (Pet. at page entitled "Ground Five Page 6(a).)

6   Petitioner first raised this claim in a petition for a writ of habeas corpus filed in the California

7   Superior Court.  (Answer, Ex. D.)  Citing In re Dixon, 41 Cal. 2d 756, 759 (1953) and In re

8   Harris, 5 Cal. 4th 813, 828 (1993), the Superior Court rejected the claim on the ground that it

9   should have been raised on appeal.[6]  (Answer, Ex. E.)  The claim was summarily denied by both

10  the California Court of Appeal and the California Supreme Court.  (Answer, Exs. G, I.)

11  Respondents argue that the Superior Court's ruling constitutes a procedural bar precluding this

12  court from addressing the merits of petitioner's lesser included offense jury instruction claim.

13  (Answer at 9-12.)

14             State courts may decline to review a claim based on a procedural default.

15  Wainwright v. Sykes, 433 U.S. 72 (1977).  As a general rule, a federal habeas court "'will not

16  review a question of federal law decided by a state court if the decision of that court rests on a

17  state law ground that is independent of the federal question and adequate to support the

18  judgment.'"  Calderon v. United States District Court (Bean), 96 F.3d 1126, 1129 (9th Cir. 1996)

19  (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)).  However, the state rule is only

20  "adequate" if it is "firmly established and regularly followed."  Id.  (quoting Ford v. Georgia, 498

21  U.S. 411, 424 (1991)).  See also Bennett v. Mueller, 322 F 3d 573, 583 (9th Cir. 2003) ("[t]o be

22  deemed adequate, the state law ground for decision must be well-established and consistently

23  applied.")  The state rule must also be "independent" in that it is not "interwoven with the federal

24  /////

25  _____

26          [6]  In re Dixon and In re Harris are the decisions typically cited by California courts for the
proposition that habeas claims that could have been, but were not, raised on appeal are barred.

15

law." Park v. California, 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting Michigan v. Long, 463

U.S. 1032, 1040-41 (1983)).

Procedural default is an affirmative defense, and the state has the burden of

showing that the default constitutes an adequate and independent ground. Insyxiengmay v.

Morgan, 403 F.3d 657, 665-66 (9th Cir. 2005); Bennett, 322 F.3d at 585-86. Once the state has

adequately pled the existence of an independent and adequate state procedural ground as an

affirmative defense, the burden to place that defense in issue shifts to the petitioner. Bennett,

322 F.3d at 585-86. The petitioner may satisfy this burden by "asserting specific factual

allegations that demonstrate the inadequacy of the state procedure, including citation to authority

demonstrating inconsistent application of the rule." Id. at 586. If the petitioner does so, the

ultimate burden shifts back to the state. Id. Thus, "the ultimate burden is on the state, not the

petitioner, to show that a procedural state bar was clear, consistently applied, and

well-established at the time the party contesting its use failed to comply with the rule in

question." Insyxiengmay, 403 F.3d at 666.

Respondents have adequately pled the existence of a state procedural bar (the

Dixon rule) as an affirmative defense. Petitioner has not addressed petitioner's procedural

default argument and has therefore failed to carry his burden to place the defense at issue.

Specifically, petitioner has not asserted "specific factual allegations that demonstrate the

inadequacy of the state procedure, including citation to authority demonstrating inconsistent

application of the rule." Bennett, 322 F.3d at 586. However, even if petitioner had met his

burden with respect to respondents' assertion of a procedural default, his jury instruction claim

fails on the merits.

The state court record reflects that petitioner requested the following instruction:

> If you believe beyond a reasonable doubt that Mr. Sykes took
> money or property, including marijuana, from Mr. Blakley without
> a gun but from his person, then you may find Mr. Sykes guilty of
> grand theft from the person, a lesser and necessarily included
> offense of robbery.

(Reporter's Transcript on Appeal (RT) at 308.)  After petitioner made this jury instruction

request, the following discussion occurred:

> MR. ORTIZ (the prosecutor):  Judge, we believe that requested
> pinpoint instruction is inappropriate.
>
> The jury is going to be given several instructions requested by the
> defense.  Specifically, they're given the reasonable-doubt
> instruction; they're given the lesser-included instruction, which all
> state in essence exactly what Miss Bowman is requesting of the
> Court.
>
> We feel that it's, not only repetitive, but inappropriate on the
> arguments based on the way that it's presented.
>
> THE COURT:  I was just going to say, I believe that it is a
> repetitive instruction of the instructions already given and
> argumentative, in that it specifically refers to disputed facts in the
> record.
>
> Now, I understand that, given how the Court interpreted your
> proposed instruction, it might not be argumentative.  But when
> taken with the fact that when other instructions do specifically
> direct the jury to a lesser-included, they are therefore, specifically
> directed to look at them, his alleged offense regarding the
> marijuana, and regarding the grand theft, rather than robbery.  So
> the jury is already instructed and directed to look at the evidence
> that is requested argumentatively, I believe, in your pinpoint
> instruction.  So, accordingly, your request for that instruction has
> been denied.

(Id. at 308-09.)

        The United States Supreme Court has held that the failure to instruct on a lesser

included offense in a capital case is constitutional error if there was evidence to support the

instruction.  See Beck v. Alabama, 447 U.S. 625, 638 (1980).  The Supreme Court has not

decided whether this rationale also extends to non-capital cases.  See Turner v. Marshall, 63 F.3d

807, 818 (9th Cir. 1995), overruled on other grounds by Tolbert v. Page, 182 F.3d 677 (9th Cir.

1999).  The Ninth Circuit, like several other federal circuit courts, has declined to extend the

holding in Beck to find constitutional error arising from the failure to instruct on a lesser

included offense in a non-capital case.  See Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000);

Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir. 1984).  See also Valles v. Lynaugh, 835 F.2d

1 126, 127 (5th Cir. 1988); Trujillo v. Sullivan, 815 F.2d 597, 602 (10th Cir. 1987); Perry v. Smith,

2 810 F.2d 1078, 1080 (11th Cir. 1987).

3       The trial court's refusal to give an instruction on the lesser included offense of

4 grand theft did not rise to the level of a constitutional error for which federal habeas relief is

5 available in this non-capital case.  See Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir. 1998)

6 ("[T]he failure of a state trial court to instruct on lesser included offenses in a non-capital case

7 does not present a federal constitutional question.").  To find a constitutional right to a

8 lesser-included offense instruction here would require the application of a new rule of law in the

9 context of a habeas petition, something the court cannot do under the holding in Teague v. Lane,

10 489 U.S. 28 (1989).  See Solis, 219 F.3d at 929 (habeas relief for failure to instruct on lesser

11 included offense in non-capital case barred by Teague because it would require the application of

12 a new constitutional rule); Turner v. Marshall, 63 F.3d 807, 819 (9th Cir. 1995) (same).  Under

13 these circumstances, the decision of the California courts denying petitioner relief as to this claim

14 was not contrary to federal law as set forth in the decision in Beck.

15       In addition, as noted by the trial court, the substance of petitioner's requested

16 lesser included offense instruction was encompassed by other jury instructions.  For instance,

17 petitioner's jury was instructed that: (1) the prosecution had the burden of proving beyond a

18 reasonable doubt the truth of the allegation that petitioner personally used a firearm during the

19 commission of the robbery (CT at 114); (2) the crime of robbery included "the lesser offense of

20 grand theft" and the jury could find petitioner guilty of that separate offense (id. at 111); and (3)

21 "the burden is on the People to prove beyond a reasonable doubt that the defendant is the person

22 who committed the crime with which he is charged."  (Id. at 18).  Given these jury instructions,

23 the trial court's failure to give the duplicative instruction requested by petitioner did not have a

24 "substantial and injurious effect on the verdict."  Brecht, 507 U.S. at 637.

25 /////

26 /////

18

1    For all of these reasons, petitioner is not entitled to relief on his claim that his due

2  process rights were violated by the failure of the trial court to give a pinpoint jury instruction

3  regarding the lesser included offense of grand theft.

4    C.  Sufficiency of the Evidence to Support a Weapon Enhancement

5    Petitioner claims that there was insufficient evidence presented at his trial to

6  support the jury's true finding on the allegation that he used a firearm in the commission of the

7  crime.  Petitioner first raised this claim in his petition for a writ of habeas corpus filed in the

8  California Superior Court.  (Answer, Ex. D.)  Relying again on In re Dixon, 41 Cal. 2d 756, 759

9  (1953) and In re Harris, 5 Cal. 4th 813, 828 (1993), the Superior Court rejected the claim on the

10  ground that it should have been raised on appeal.  (Answer, Ex. E.)  The claim was summarily

11  denied by both the California Court of Appeal and the California Supreme Court.  (Answer, Exs.

12  G, I.)

13    Respondents again argue that the Superior Court's ruling constitutes a procedural

14  bar precluding this court from addressing the merits of petitioner's claim of insufficient evidence.

15  (Answer at 9-12.)  For the same reasons explained above with respect to the lesser included

16  offense jury instruction claim, petitioner has failed to carry his burden to refute respondents'

17  assertion of this defense.  Moreover, petitioner's sufficiency of the evidence claim lacks merit

18  and should be rejected in any event.

19    The Due Process Clause of the Fourteenth Amendment "protects the accused

20  against conviction except upon proof beyond a reasonable doubt of every fact necessary to

21  constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  There

22  is sufficient evidence to support a conviction if, "after viewing the evidence in the light most

23  favorable to the prosecution, any rational trier of fact could have found the essential elements of

24  the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  See also

25  Prantil, 843 F.2d at 316.  "[T]he dispositive question under Jackson is 'whether the record

26  evidence could reasonably support a finding of guilt beyond a reasonable doubt.'"  Chein v.

1    Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 318).  A petitioner in

2    a federal habeas corpus proceeding "faces a heavy burden when challenging the sufficiency of the

3    evidence used to obtain a state conviction on federal due process grounds."  Juan H. v. Allen,

4    408 F.3d 1262, 1274 (9th Cir. 2005).  In order to grant the writ, the habeas court must find that

5    the decision of the state court reflected an objectively unreasonable application of Jackson and

6    Winship to the facts of the case.  Juan H. v. Allen, 408 F.3d at 1275.

7            The court must review the entire record when the sufficiency of the evidence is

8    challenged in habeas proceedings.  Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985),

9    vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is

10   the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw

11   reasonable inferences from basic facts to ultimate facts."  Jackson, 443 U.S. at 319.  If the trier of

12   fact could draw conflicting inferences from the evidence, the court in its review will assign the

13   inference that favors conviction.  McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994).  The

14   relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether

15   the jury could reasonably arrive at its verdict.  United States v. Dinkane, 17 F.3d 1192, 1196 (9th

16   Cir. 1994) (quoting United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991)).  "The question is

17   not whether we are personally convinced beyond a reasonable doubt.  It is whether rational jurors

18   could reach the conclusion that these jurors reached."  Roehler v. Borg, 945 F.2d 303, 306 (9th

19   Cir. 1991).  The federal habeas court determines the sufficiency of the evidence in reference to

20   the substantive elements of the criminal offense as defined by state law.  Jackson, 443 U.S. at

21   324 n.16; Chein, 373 F.3d at 983.

22           Nathaniel Blakley testified that as petitioner was ordering him to "break bread,"

23   he showed Blakley a pistol that was in his jacket pocket.  (RT at 102.)  Blakley could not see the

24   "tip of the gun," but he saw the handle, hammer and "revolver."  (Id. at 103.)  Blakley described

25   the gun as a "Blue steel Smith and Wesson .357."  (Id. at 159.)  Blakley also testified that he had

26   seen petitioner with the same gun a week earlier.  (Id. at 104.)  Blakley's testimony provided

1  sufficient evidence for a rational juror to find that petitioner personally used a firearm in the

2  commission of the robbery.[7]  Accordingly, petitioner is not entitled to habeas relief on his claim

3  of insufficient evidence.

4       D. <u>Ineffective Assistance of Appellate Counsel</u>

5       Finally, petitioner claims that his appellate counsel rendered ineffective assistance

6  by failing to raise two claims on appeal: that the evidence was insufficient to support the jury's

7  true finding on the firearm allegation and that the trial court erred in declining to give a pinpoint

8  jury instruction on the lesser included offense of grand theft from the person.

9       The Sixth Amendment guarantees the effective assistance of counsel.  The United

10  States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

11  <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

12  counsel, a petitioner must first show that, considering all the circumstances, counsel's

13  performance fell below an objective standard of reasonableness.  <u>See</u> <u>Strickland</u>, 466 U.S. at

14  687-88.  After a petitioner identifies the acts or omissions that are alleged not to have been the

15  result of reasonable professional judgment, the court must determine whether, in light of all the

16  circumstances, the identified acts or omissions were outside the wide range of professionally

17  competent assistance.  <u>Id.</u> at 690; <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003).  Second, a

18  petitioner must establish that he was prejudiced by counsel's deficient performance.  <u>Strickland</u>,

19  466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for

20  counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at

21

22      [7] Petitioner notes that two women who were in the home during the robbery testified that
they did not see the gun.  (Pet. at page entitled "Continuation of Ground four Page 6(c).)

23  However, their testimony in this regard does not directly contradict Blakley's testimony that
petitioner showed the gun to him.  Petitioner also asserts that Blakley testified at the preliminary

24  hearing that he was not sure whether petitioner possessed a gun.  (<u>Id.</u> at 6(b).)  However, when
reviewing a sufficiency of the evidence claim under <u>Jackson</u>, "the assessment of the credibility of

25  witnesses is generally beyond the scope of review."  <u>Schlup v. Delo</u>, 513 U.S. 298, 330 (1995).
This court will not speculate on the credibility of Mr. Blakley's testimony at trial.  He was

26  subject to extensive cross-examination.  (RT at 137-83, 188-89.)  The jury was entitled to
consider the evidence and give Mr. Blakley's testimony the weight they believed it deserved.

694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'" Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689).  There is in addition a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

The Strickland standards apply to appellate counsel as well as trial counsel.  Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).  However, an indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751 (1983).  Counsel "must be allowed to decide what issues are to be pressed."  Id.  Otherwise, the ability of counsel to present the client's case in accord with counsel's professional evaluation would be "seriously undermined."  Id.  See also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate advocacy.")  There is, of course, no obligation to raise meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to demonstrate prejudice in this

context, petitioner must demonstrate that, but for counsel's errors, he probably would have prevailed on appeal. Id. at 1434 n.9.

Petitioner has failed to demonstrate prejudice with respect to his claim of ineffective assistance from his appellate counsel. For the reasons explained above, petitioner's claims of insufficient evidence and that his due process rights were violated when the trial court failed to give a jury instruction on the lesser included offense of grand theft from the person, are meritless. Appellate counsel's decision to press only claims that she believed, in her professional judgment, had more merit than the claims suggested by petitioner was "within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, 397 U.S. 759, 771 (1970). The state court determination with regard to petitioner's claim of ineffective assistance of appellate counsel was not contrary to, or an unreasonable application of Strickland. Accordingly, petitioner is not entitled to habeas relief on this claim.

CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised

/////
/////
/////
/////
/////

23

1    that failure to file objections within the specified time may waive the right to appeal the District

2    Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3    DATED: October 11, 2007.

4

5    _____

6    DALE A. DROZD
     UNITED STATES MAGISTRATE JUDGE

7    DAD:8
     sykes2150.hc

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26